IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:15-CV-00021-RN

**Lavoris Leach**,

                        Plaintiff,

v.

**Carolyn Colvin**, Acting Commissioner of Social Security,

                        Defendant.

**Memorandum & Order**

Plaintiff Lavoris Leach instituted this action on February 18, 2015 to challenge the denial of her application for social security income. Leach claims that Administrative Law Judge Edward Bowling erred in failing to account for all of her impairments in both the residual functional capacity ("RFC") assessment and the hypothetical questions posed to the Vocational Examiner ("VE") and in failing to consider a favorable Medicaid decision as required by S.S.R. 06-03p. Both Leach and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment in their favor. D.E. 21, 23.

After reviewing the parties' arguments, the court has determined that ALJ Bowling erred in his decision. ALJ Bowling's determination is not supported by substantial evidence as he failed to properly account for Leach's limitations in concentration, persistence, and pace. Additionally, a favorable Medicaid decision warrants consideration. Therefore, the court grants Leach's Motion for Judgment on the Pleadings, denies Colvin's Motion for Judgment on the Pleadings, and directs that the Commissioner's final decision be remanded for further consideration.

**I.     Background**

On January 28, 2010, Leach filed applications for disability insurance benefits and supplemental security income on the basis of a disability that allegedly began on October 5, 2009. After her claim was denied at both the initial stage and upon reconsideration, Leach appeared for a hearing before an Administrative Law Judge ("ALJ"). Her applications were denied but, on appeal, the Appeals Council remanded the matter. Leach appeared via video-conference before ALJ Bowling for a second hearing on April 16, 2013. ALJ Bowling determined that Leach was not entitled to benefits because she was not disabled. Tr. at 18–29.

In his decision, ALJ Bowling found that Leach had the following severe impairments: obesity, hypertension, headaches, depression, and anxiety. *Id*. at 21. ALJ Bowling also found that her impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* ALJ Bowling determined that Leach had the RFC to perform medium work with the following limitations: she can never climb ropes, ladders, or scaffolds; she should avoid concentrated exposure to hazards; she should avoid concentrated exposure to odors, gases, dust, and fumes; she can perform simple, routine, repetitive tasks; she can apply commonsense understanding to carry out oral, written, and diagrammatic instructions; and she can have frequent contact with the public and coworkers. *Id.* at 23. ALJ Bowling concluded that Leach was able to perform her past work as a turkey cleaner, a production assembler, and a meat packager. *Id.* at 28. Thus, ALJ Bowling found that Leach was not disabled. *Id*. at 29. After unsuccessfully seeking review by the Appeals Council, Leach commenced this action and filed a complaint pursuant to 42 U.S.C. § 405(g) on February 18, 2015. D.E. 6.

## II. Analysis

### A. Standard for Review of the Acting Commissioner's Final Decision

When a social-security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B. Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650, 653–54 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, then, at step four, the claimant's RFC is assessed to determine whether the claimant can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to

step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

C.  **Residual functional capacity**

Leach contends that ALJ Bowling erred in determining her RFC and in posing hypothetical questions to the VE. In discussing whether Leach established the "paragraph B" criteria[1] at step three, ALJ Bowling found that she had moderate limitations in concentration, persistence, and pace.[2] Tr. at 22. ALJ Bowling noted that Leach watches television and reads the Bible. *Id.* ALJ Bowling's RFC determination limited her to simple, routine, repetitive tasks and found she could apply commonsense understanding to carry out oral, written, and diagrammatic instructions with frequent contact with coworkers and the general public. *Id.* at 23, 28. ALJ Bowling posed the following hypothetical question to the VE:

---

[1] At step three of the sequential evaluation, the ALJ determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings 12.00 *et. seq.*, pertaining to mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. Each listing therein consists of: (1) a brief statement describing its subject disorder; (2) "paragraph A criteria," which consists of a set of medical findings; and (3) "paragraph B criteria," which consists of a set of impairment-related functional limitations. Id. § 12.00(A). If both the paragraph A criteria and the paragraph B criteria are satisfied, the ALJ will determine that the claimant meets the listed impairment. *Id.* Paragraph B consists of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.

[2] The functional area of "concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(3).

4

> Assume . . . a hypothetical individual [who] would be limited to simple, routine, repetitive tasks and by that I mean they could apply commonsense understanding to oral, written, and diagrammatic instructions[.]

*Id.* at 57. Leach asserts that a limitation to simple, routine, repetitive tasks does not properly account for moderate limitations in the ability to maintain concentration, persistence, and pace.

In *Mascio v. Colvin*, the Fourth Circuit joined the Third, Seventh, and Eighth Circuits by holding that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d 632, 638 (4th Cir. 2015) (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). The Fourth Circuit noted that "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The Fourth Circuit noted the possibility that an ALJ could offer an explanation regarding why a claimant's moderate limitation in concentration, persistence, or pace, at step three did not translate into a limitation in the claimant's RFC assessment, such that the apparent discrepancy would not constitute reversible error. *Id.* Because the ALJ in *Mascio* found at step three that the claimant had limitations in this functional area, but did not account for such limitations in the hypothetical questions at step five, the Fourth Circuit found that remand was appropriate. *Id.*

The Commissioner asserts that *Mascio* is distinguishable from the present case because *Mascio* held that simple, routine tasks or unskilled work did not account for limitations in concentration, persistence, or pace. Here, however, ALJ Bowling did not simply limit her to simple, routine, repetitive tasks. Instead, the Commissioner maintains, ALJ Bowling accounted for Leach's limitations in concentration, persistence, and pace by including in the hypothetical

5

question the use of commonsense understanding to carry out oral, written, and diagrammatic instructions. The Commissioner further contends that ALJ Bowling's RFC and hypothetical questions found that Leach could have frequent contact with coworkers and the public. The court fails to find these differences persuasive so as to distinguish, and decline to follow, *Mascio's* holding.

North Carolina federal district courts that address this issue from *Mascio* have almost exclusively determined that remand was warranted because the limitation in concentration, persistence, and pace was not accounted for in the RFC and/or hypothetical question to the VE. *See Weeks v. Colvin*, No. 5:14-cv-155-D, 2015 WL 5242927, at *4 (E.D.N.C. Sept. 8, 2015) (limitation to simple, routine, repetitive tasks with only occasional contact with the general public and few workplace changes did not sufficiently address claimant's limitations in pace); *Taylor v. Colvin*, No. 1:14-cv-629, 2015 WL 4726906 (M.D.N.C. Aug. 10, 2015) (RFC determination that claimant could understand, remember, and carry out one and two step instructions/tasks did not reflect address moderate limitations in concentration, persistence, and pace); *Scruggs v. Colvin*, No. 3:14–cv–00466–MOC, 2015 WL 2250890, at *5 (W.D.N.C. May 13, 2015) (finding that an ability to perform simple, routine, repetitive tasks in a nonproduction environment, without more, does not account for claimant's moderate difficulties in concentration, persistence and pace); *Raynor v. Colvin*, No. 5:14–CV–271–BO, 2015 WL 1548996, at *2 (E.D.N.C. Apr. 7, 2015) (remanding where the hypothetical posed to the VE did not pose any limitations related to concentration and persistence other than limiting plaintiff to simple, routine tasks and the ALJ's written decision limited plaintiff to work with simple instructions and work-related decisions as well as no fast-paced production); *Salmon v Colvin*, No. 1:12-cv-1209, 2015 WL 1526020, at *3 (M.D.N.C. Apr. 2, 2015) (holding that a

6

hypothetical limiting claimant to "simple, routine, repetitive tasks in that [she] could apply commonsense understanding to carry out instructions furnished on a written, oral, or diagrammatic form" did not account for claimant's moderate limitations in concentration, persistence and pace and did not address her ability to say on task).

In the present case, as noted above, the hypothetical question to the VE contemplated an individual limited to simple, routine, repetitive tasks; who could follow oral, written, and diagrammatic instructions; and who could have frequent interactions with the public and coworkers. The majority of courts in North Carolina, including this court, have held that such restrictions do not adequately address a claimant's moderate limitations in concentration, persistence and pace. *See Weeks*, 2015 WL 4510238; *Salmon,* 2015 WL 1526020.

Although an ALJ's findings at step three may not require any additional limitations for concentration, persistence, or pace in the RFC, the ALJ must at least provide a sufficient explanation in the decision to allow the court to conduct meaningful review of the RFC determination. *See Scruggs*, 2015 WL 2250890, at *5; *Reinhardt v. Colvin*, No. 3:14–cv–00488–MOC, 2015 WL 1756480, at *3 (W.D.N.C. Apr. 17, 2015). However, ALJ Bowling's decision does not explain how he accounted for the moderate limitations in concentration, persistence, and pace when formulating Leach's RFC. His step-three discussion determining whether her mental impairments meet a Listing does not sufficiently address the limitations in concentration, persistence, and pace as they relate to the RFC as required by *Mascio*. Given these cases, remand for further consideration of Leach's moderate limitations in concentration, persistence, and pace as they impact other work is appropriate.

For these reasons, Leach's motion is granted on this issue. On remand, the ALJ should specifically state how the RFC determination reflected Leach's limitations in concentration,

7

persistence, and pace[3] and whether the ALJ determines that the moderate limitations in concentration, persistence, and pace has no impact on Leach's ability to work.

**D.    Medicaid decision**

On May 24, 2012, Leach was approved for Medicaid by the North Carolina Department of Health and Human Services. Tr. at 331. Although this evidence was not available at the hearing stage, it was presented to the Appeals Council. Thus, it must be considered. *Brown v. Comm'r of Soc. Soc.*, 969 F. Supp. 2d 433, 444 (citing *Wilkins v. Secr'y, Dept. of Health & Human Servs.*, 953 F.2d 93, 95–96 (4th Cir. 1991)).

As provided at 20 C.F.R. § 404.1504 and further explained in Social Security Ruling ("S.S.R.") 06–03p, "a determination made by another agency that [the claimant is] disabled or blind is not binding on" the Social Security Administration. 20 C.F.R. § 404.1504. Rather, "the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner." S.S.R. 06–03p. However, the Fourth Circuit addressed the value of disability findings by other agencies in *Bird v. Commissioner of Social Security Administration*, 699 F.3d 337 (4th Cir. 2012). The Court of Appeals noted that while another agency's disability determination is not binding on the SSA, "another agency's disability determination 'cannot be ignored and must be considered.'" *Bird*, 699 F.3d at 343. In considering the weight to give a decision of the Veterans Administration ("VA") in particular, the Fourth Circuit held:

> The assignment of at least some weight to a VA disability determination reflects the fact that both the VA and Social Security programs serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability. Both programs evaluate a claimant's ability to perform full-

---

[3] Given the case law cited above, it would be seem that the RFC limitation, as stated, could not account for moderate limitations in concentration, persistence, and pace.

time work in the national economy on a sustained and continuing basis; both
focus on analyzing a claimant's functional limitations; and both require claimants
to present extensive medical documentation in support of their claims.

*Bird*, 699 F.3d at 343 (internal quotations omitted). The Fourth Circuit therefore concluded that "in making a disability determination, the SSA must give substantial weight to a VA disability rating," and "an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate." *Id.*

Leach posits that both the Medicaid and SSA determinations are based on the same regulations. Presumably, NCHHS relied upon many of the same records Leach presented for her instant disability application. Given that remand of the matter is warranted in light of *Mascio*, the NCHHS Medicaid decision should be considered upon remand in accordance with *Bird* and S.S.R. 06-03p.[4]

### III. Conclusion

For the forgoing reasons, the court grants Leach's Motion for Judgment on the Pleadings (D.E. 21), denies Colvin's Motion for Judgment on the Pleadings (D.E. 23), and directs that the Commissioner's final decision be remanded for further consideration.

Dated: January 4, 2016.

_____
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE

---

[4] On remand, the ALJ might well conclude on this record that Plaintiff's Medicaid eligibility finding should be given substantially less weight than the *Bird's* presumption requires. But that analysis is for the ALJ to perform in the first instance inasmuch as it is not the job of a reviewing court to substitute its own analysis of the evidence. *Persaud v. Colvin*, No. 2:12-cv-661, 2014 WL 198922, at *11 (E.D. Va. Jan. 14, 2014).